GRAND PRAIRIE INDEPENDENT
SCHOOL DISTRICT and City of
Grand Prairie, Appellants,

v.

SOUTHERN PARTS IMPORTS, INC.,
d/b/a Southern Volks, Heller Financial, Inc., f/k/a Texas Heller Western,
Inc., Southern Volks, Inc., and Steven
Larkin, Appellees.

No. 05-90-00424-CV.

Court of Appeals of Texas,
Dallas.

Jan. 9, 1991.
Rehearing Denied Feb. 12, 1991.

---

1. Appellant may seek his remedy by bill of review as provided by Rule 329b(f). *See Williams* at 641.

Harry J. Martin, Jr., Gary Pridavka, Dallas, for appellees.

Before McCLUNG, ROWE and BURNETT, JJ.

## OPINION

ROWE, Justice.

The Grand Prairie Independent School District and the City of Grand Prairie appeal from a summary judgment in favor of Heller Financial, Inc.[1] and a final judgment in favor of Southern Parts Imports, Inc. and Southern Volks, Inc. (collectively referred to as Southern Volks) and Steven Larkin (the president of the Southern Volks entities). We dismiss the school district's appeal for want of jurisdiction, and we overrule the city's points of error and affirm the judgment of the trial court, including the summary judgment in favor of Heller, with respect to the city.

■ We first address the threshold issue as to whether the school district properly perfected its appeal to this Court. The school district filed a notice of appeal rather than an appeal bond. As a general rule, school districts are required to post appeal bonds in order to perfect an appeal. *See Wilson v. Thompson,* 162 Tex. 390, 391–94, 348 S.W.2d 17, 18–19 (1961) (per curiam); *Plano Indep. School Dist. v. Oake,* 682 S.W.2d 359, 361 (Tex.App.—Dallas 1984), *rev'd on other grounds,* 692 S.W.2d 454 (Tex.1985); *Marshall v. Brown,* 635 S.W.2d 578, 581 (Tex.App.—Amarillo 1982, writ ref'd n.r.e.). However, the legislature has exempted school districts from the requirement of filing an appeal bond in suits to collect delinquent taxes. *See Brady Indep. School Dist. v. Davenport,* 663 S.W.2d 637, 638–39 (Tex.App.—Austin 1983, no writ) (per curiam); TEX.TAX CODE ANN. § 33.49(a) (Vernon 1982). The issue then boils down to whether the present appeal is an appeal in a suit to collect delinquent taxes.

■ In addressing this issue, we consider the facts and circumstances leading up

Linda S. Tyson, Grand Prairie, for appellants.

---

1. When rendered, the summary judgment in favor of Heller was interlocutory. It became final when the trial court rendered judgment disposing of the remainder of the case.

to the initiation of this lawsuit. Southern Volks failed to pay taxes assessed on its personal property by the city and the school district for the years 1983, 1984, 1985, and 1986. A statutory tax lien attached to the property to secure the payment of the taxes. *See* TEX.TAX CODE ANN. § 32.01 (Vernon Supp.1991). In March 1983, Heller loaned money to Southern Volks and obtained a security interest in certain personal property owned by Southern Volks. Heller duly perfected its security interest by filing the appropriate documents with the Texas Secretary of State. Thus, the personal property at issue in this case was encumbered by liens in favor of the city, the school district, and Heller. By statute, the tax liens in favor of the city and the school district had priority over Heller's lien. *See* TEX.TAX CODE ANN. § 32.05(b) (Vernon 1982).

Southern Volks defaulted under the terms of its loan agreement with Heller. Heller accelerated the debt, demanded full payment, and filed suit against Southern Volks in November 1983 seeking the amounts owed. In February 1984, Southern Volks filed a petition in bankruptcy. The bankruptcy proceedings continued until the case was dismissed on May 11, 1987.[2] On May 19, 1987, the school district filed suit against Southern Volks seeking payment of the delinquent property taxes and foreclosure of its tax lien. The city later intervened, and both the city and the school district obtained, on November 25, 1987, a summary judgment for payment of the delinquent taxes and foreclosure of the tax liens. On June 15, 1987, in accordance with the terms of Southern Volks's motion to dismiss the bankruptcy case (which motion was filed April 1, 1987), Heller conducted a private foreclosure sale of the Southern Volks personal property. The property was sold to Southern Parts Imports, a new corporation whose president was Larkin. On June 8, 1988, the city and the school district filed the present lawsuit against the Southern Volks entities (including Southern Parts Imports), Larkin (the

president of the Southern Volks entities), and Heller.

■ Examination of the petition filed by the city and the school district in this suit establishes that this case does not include a claim for unpaid taxes. The city and the school district clearly sought damages, both actual and punitive, based on two causes of action related to Heller's foreclosure sale of the Southern Volks property, namely fraudulent conveyance and wrongful foreclosure. Neither assertion constitutes a claim for unpaid taxes. In fact, the city and the school district admit that they have already obtained a judgment for the unpaid property taxes by way of their previous lawsuit against Southern Volks. The claims set forth in their petition in the present case are directed against Heller as well as Southern Volks and Larkin; yet it is undisputed that the city and the school district have no claim against Heller for collection of delinquent taxes. The petition bears no resemblance to a proper petition for collection of delinquent property taxes and lacks many of the essential elements of such a petition. *See* TEX.TAX CODE ANN. § 33.43 (Vernon 1982).

Based on the foregoing, we determine that this appeal is not an appeal in a suit to collect delinquent taxes. Therefore, the school district was required to post an appeal bond in order to perfect its appeal. Because it failed to do so, we have no jurisdiction over the school district's attempted appeal. Accordingly, we must dismiss the appeal of the Grand Prairie Independent School District for want of jurisdiction. *See Oake*, 682 S.W.2d at 361.

We now address the merits of the city's appeal. In its first point of error, the city maintains that the trial court erred in granting the summary judgment in favor of Heller. The city argues that there was a genuine issue of material fact concerning whether Heller had notice of the city's claims with respect to the personal property when Heller foreclosed. The city also contends that a fact issue existed regarding Heller's intent to defraud or delay. As

---

**2.** Presumably, Heller did not pursue its lawsuit against Southern Volks because it was automati- cally stayed under the controlling provisions of federal bankruptcy law.

to the claim of wrongful foreclosure, the city maintains that there were factual issues concerning Heller's failure to give notice to the city of the proposed foreclosure sale.

Summary judgment is proper if the summary judgment record shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* TEX.R.CIV.P. 166a(c). The purpose of summary judgment is the elimination of patently unmeritorious claims or untenable defenses; it is not intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact. *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). In reviewing the propriety of a summary judgment, we are bound by these standards: (1) the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts must be resolved in its favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

■ The city's claims of fraudulent conveyance and wrongful foreclosure concern the foreclosure sale conducted by Heller on June 15, 1987. Because the conveyance took place before the effective date of the legislature's adoption of the Uniform Fraudulent Transfer Act, the prior statutory law concerning fraudulent transfers is applicable to this case. *See* Uniform Fraudulent Transfer Act, 70th Leg., R.S., ch. 1004, §§ 2 & 3, 1987 Tex.Gen.Laws 3388, 3394. The applicable statute is former section 24.02(a) of the Business and Commerce Code, which provided:

(a) A transfer of real or personal property, a suit, a decree, judgment, or execution, or a bond or other writing is void with respect to a creditor, purchaser, or other interested person if the transfer, suit, decree, judgment, execution, or bond or other writing was intended to

(1) delay or hinder any creditor, purchaser, or other interested person from obtaining that to which he is, or may become, entitled; or

(2) defraud any creditor, purchaser, or other interested person of that to which he is, or may become, entitled.

Act of May 25, 1967, 60th Leg., R.S., ch. 785, § 1, 1967 Tex.Gen.Laws 2343, 2598 (current version at TEX.BUS. & COM.CODE ANN. § 24.005 (Vernon 1987)). Under this statute, avoidance of a conveyance requires proof of intent to delay, hinder, or defraud a creditor. *See Carnes v. Meador*, 533 S.W.2d 365, 372 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.) (op. on mot. for reh'g).

■ As noted by the city, summary judgment is generally improper when a case involves issues such as intent. *See Dan Lawson & Assocs. v. Miller*, 742 S.W.2d 528, 530 (Tex.App.—Fort Worth 1987, no writ); *Hilton v. Texas Inv. Bank*, 650 S.W.2d 545, 547 (Tex.App.—Houston [14th Dist.] 1983, no writ). Of course, the cited proposition presupposes that there is in fact a genuine issue as to intent. There can be cases in which intent, or lack thereof, is established as a matter of law. *See Southwestern Paper Co. v. Campbell*, 97 S.W.2d 520, 522 (Tex.Civ.App.—Dallas 1936, writ dism'd).

The city alleged in its petition that Heller possessed actual knowledge and notice of the city's tax liens. The city further alleged that Heller sold the property with the intent to prevent the city from obtaining satisfaction of its claim for the unpaid taxes. Heller maintains that no such issue of intent existed because there was no summary judgment evidence tending to show that Heller was aware of the city's claims with respect to the property that was sold. Absent such awareness, Heller argues that it could not have intended to delay, hinder, or defraud the city. Heller also points to summary judgment evidence that indicates lack of such intent.

After examining the summary judgment record, we conclude that there was no genuine issue of fact regarding intent to delay,

hinder, or defraud. There are several reasons for our conclusion.

First, we find no summary judgment evidence in the record indicating that Heller had either constructive or actual knowledge of the city's claims to the property. The city relies upon an affidavit and copies of letters referenced in the affidavit. The letters, dated May 22, 1987, are addressed to Heller's Dallas and Chicago offices. The text of the letters states that the Grand Prairie Independent School District has asserted a tax lien on Southern Volks property and is prosecuting a suit to foreclose the lien. The affiant states that the copies of the letters are true and correct and that the originals were properly addressed, stamped, and mailed. The obvious problem with this summary judgment evidence is that it does not show that Heller had knowledge of any claim asserted by *the city;* the letters refer only to the school district's claim.[3]

The city also maintains that there was evidence that Heller had knowledge of the city's claims to the property because of various documents that were filed in the Southern Volks bankruptcy proceeding. Our review of those documents indicates otherwise. A Schedule A ("STATEMENT OF ALL LIABILITIES OF DEBTOR") filed in the bankruptcy case refers to taxes owed by Southern Volks to an unspecified county and school district; it says nothing about any taxes owed to any city. Schedule A–2 ("Creditors Holding Security") lists a number of secured creditors but contains no mention of the City of Grand Prairie. A Claims Register lists three claims filed by the city, but none of those listings contains any indication whatsoever that the city is a secured creditor or that the city holds any lien or other interest in property of the debtor (Southern Volks).

There simply is no summary judgment evidence indicating that Heller had either constructive or actual notice of the city's claims with respect to the Southern Volks property. The absence of knowledge or notice is inconsistent with an intent to delay, hinder, or defraud the city. An assertion that one party has acted with intent to delay, hinder, or defraud another party necessarily depends upon some evidence that the first party was aware that its conduct would somehow affect the second party. The summary judgment record in this case is devoid of any such evidence.

Second, the summary judgment evidence establishes that Heller preserved any rights that the city (or any other entity) might have had in the property when Heller sold the property. The record contains the bill of sale by which Heller sold the property to Southern Parts. That document expressly provides that the sale was "SUBJECT TO *ANY* CLAIMS, LIENS OR DEMANDS OF *ANY* THIRD PARTY, INCLUDING THE INTERNAL REVENUE SERVICE OR OTHER STATE OR FEDERAL TAXING AUTHORITIES, IF ANY." (Emphasis added.)[4]

Third, prior constructive notice of the foreclosure sale was provided by means of Southern Volks's motion to dismiss the bankruptcy case. That motion, filed on April 1, 1987, stated that the secured creditors had informed the debtor (Southern Volks) that they would foreclose on all of the debtor's assets. Further, the motion specifically stated that the debtor's assets would be sold to a new company owned by Larkin, the president and majority shareholder of the debtor.

The foregoing evidence belies any intent on Heller's part to delay, hinder, or defraud the city; this is particularly true of the total lack of evidence indicating that Heller was even aware of the city's interest in the property sold. Viewing the evidence and reasonable inferences most favorably to

---

**3.** The letters also do not in any way specify the Southern Volks property which is subject to the school district's claim. Although the letters also refer to an "enclosed pleading," the affidavit does not establish the identity or contents of the pleading that was supposedly enclosed with the letters.

**4.** Although it could be argued that this provision in the bill of sale does not necessarily rule out an intent to hinder or delay the city, we are of the opinion that other evidence in the record, as discussed in our opinion, conclusively establishes the absence of any such intent.

the city, as we must, and recognizing the rule that questions of intent generally present issues of fact, we nevertheless conclude that the summary judgment record contains undisputed facts which would compel all reasonable persons, exercising sound and impartial judgment, to draw inferences and conclusions requiring a verdict for the summary judgment movant. *See Hennessy v. Estate of Perez*, 725 S.W.2d 507, 509 (Tex.App.—Houston [1st Dist.] 1987, no writ); 4 R. MCDONALD, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS § 17.26.12, at 208–09 (rev.1984). We hold, therefore, that Heller was entitled to summary judgment in its favor on the claim of fraudulent conveyance.

■ With respect to the claim of wrongful foreclosure, the city contends that Heller failed to comply with the notice requirements of section 9.504 of the Business and Commerce Code. That provision deals with a secured party's right to dispose of collateral after default by the debtor. In pertinent part, it states:

(c) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts.... Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent. In other cases *notification shall be sent to any other secured party who has a security interest in the same collateral* and who has duly filed in the office of the Secretary of State or of the county clerk in the proper county in this state a financing statement indexed in the name of the debtor *or from whom the secured party has received (before sending his notification to the debtor or before the debtor's renun-*

*ciation of his rights) written notice of a claim of an interest in the collateral.*

TEX.BUS. & COM.CODE ANN. § 9.504(c) (Tex. UCC) (Vernon Supp.1991) (emphasis added). Presumably because it was not required to do so in order to perfect its tax lien, the city did not file any financing statement. Thus, according to the terms of section 9.504, Heller was not required to notify the city of the proposed foreclosure sale unless it had received from the city written notice of the city's claim of an interest in the collateral. *See id.*, "Official U.C.C. Reasons for 1972 Change." There is no summary judgment evidence showing that Heller received such notice. Therefore, Heller was not required to notify the city of the proposed foreclosure sale, and the foreclosure could not have been wrongful for failure to do so. Accordingly, we hold that the trial court properly granted summary judgment in favor of Heller with respect to the city's claim of wrongful foreclosure.

Because the record shows that Heller was entitled to summary judgment on all of the city's claims against Heller, we overrule the first point of error.

■ In the second and third points of error, the city asserts that the trial court erred in rendering judgment in favor of Southern Volks and Larkin because the court's finding that they did not engage in a fraudulent transfer is against the great weight and preponderance of the evidence. Review of these factual insufficiency points involves consideration of all of the evidence, and the trial court's finding cannot be set aside unless it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

■ The judgment in favor of Southern Volks and Larkin, unlike the judgment in favor of Heller, was rendered following a trial on the merits. The appellate record accordingly includes a statement of facts consisting of a transcription of the testimony elicited at the trial. However, the city's brief contains no references to the statement of facts, and there is no argument based upon the testimony received at trial.

The city merely refers to some of the documents contained in the transcript (which is also part of the appellate record). Most of these references are to documents which were the subject of our previous discussion concerning the summary judgment rendered in favor of Heller. Although at least some of those documents may be relevant to the city's complaint regarding factual sufficiency of the evidence, those documents obviously constitute only a fraction of the entire evidentiary picture upon which the trial court's final judgment and findings were based.

We find nothing in the referenced documents that would lead to the conclusion that the trial court's finding is so against the overwhelming weight of the evidence as to be clearly wrong and unjust. The documents do indicate that Southern Volks and Larkin were aware that the property taxes had not been paid. Since Southern Volks and Larkin were parties to the initial lawsuit filed by the school district and the city which resulted in a summary judgment in favor of the city and the district, the documentary evidence shows that Larkin and Southern Volks were aware that the property was encumbered by a tax lien in favor of the city. However, the bill of sale by which Heller sold the property to Southern Parts establishes that Southern Parts acquired the property subject to any outstanding liens or interests affecting the property. Moreover, Southern Volks's motion to dismiss the bankruptcy case provided notice that the personal property would be conveyed by foreclosure sale to a new company owned by Larkin. Thus, there is certainly evidence which is inconsistent with the essential element of intent to hinder, delay, or defraud the city. Based on the documentary evidence contained in the transcript, we cannot conclude that the finding that Southern Volks and Larkin did not engage in a fraudulent transfer is so against the overwhelming weight of the evidence as to be clearly wrong and unjust.

■ It is an appellant's duty to provide references to the location of any evidence in the record which might support its contentions. *See* TEX.R.APP.P. 74(f). A party asserting error on appeal bears the burden of showing that the record supports its contentions and of specifying the places in the record where matters complained of or relied upon may be found. The failure to meet this burden results in waiver of the asserted error. *See Most Worshipful Prince Hall Grand Lodge v. Jackson*, 732 S.W.2d 407, 412 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). To the extent, if any, that the statement of facts might have provided support for the city's argument, the asserted error, if any, has been waived because the city failed to meet its burden of identifying the supporting evidence.[5] To the extent that the city did satisfy its burden, the record does not establish that the evidence was insufficient to support the trial court's findings. We overrule the second and third points of error.

In its final point of error, the city contends that the trial court erred as a matter of law in rendering a take nothing judgment in favor of Southern Volks because the city already had a judgment against Southern Volks for the unpaid property taxes. This point lacks merit because the city misconstrues the trial court's judgment. Although the judgment does contain language that suggests that the city was not entitled to a judgment for the taxes owed, the judgment must be read in light of the claims being adjudicated. Thus, the judgment decreed that the city shall take nothing on its claims of fraudulent conveyance and wrongful foreclosure. The trial court could not, and did not, adjudicate the city's right to collection of the delinquent taxes, and the judgment expressly so states: "This Judgment does not in any way affect the validity or force of the Judgment taken by the Plaintiffs against Southern Volks, Inc. taken [sic] on November 25, 1987." This statement refers to the earlier summary judgment rendered in favor of the city (in a separate

5. It may well be that the city has foregone reliance upon the statement of facts because the desired evidentiary support for its contentions is not there. In any event, we have no obligation to look for that which the city has chosen not to cite in its brief. *Jackson*, 732 S.W.2d at 412.

lawsuit) for payment of the delinquent taxes and foreclosure of the city's tax lien. Because the trial court did not commit the error asserted by the city, we overrule the fourth point of error.

Having overruled all of the city's points of error, we affirm the judgment of the trial court, including the summary judgment in favor of Heller, with respect to the city.